Good morning, Your Honors. May it please the Court, my name is Tyrone Shepard and I represent the appellant in this matter, Pamela Lawson. As you know, the District Court dismissed this action by way of summary judgment, or disposed of the action by way of summary judgment, in favor of Reynolds based on the fact that there was no tribal issue of fact with regard to the retaliation that was claimed by Ms. Lawson. We have a timeliness issue in this case, too. We do, Your Honors. As a matter of fact, we have two rather interesting timeliness issues. I think that's perhaps what the case turns on. Okay. In the Title VII action, the appellees pointed out a case, Payon v. Aramack, that was just recently decided in the circuit, where, with regard to the timeliness of the action after the EEOC gives a right to sue letter, the determination of the 90-day time period runs from the date of mailing until the date of receipt, and 90 days after receipt by the claimant, the claimant has to file an action in court. Now, in this case, there's no evidence in the record as to when Ms. Lawson received that right to sue letter, if she did. Presumed, if I remember correctly, to be within several days. That's a presumption. There's nothing to suggest that that didn't happen. That's true. And as Ms. Lawson testified at her deposition, she doesn't know of any reason why she didn't receive it, although she couldn't recall receiving it. But then the presumption would stand, right? Sure. But the problem in this case is, when was it mailed, or was it mailed? And we have in the record the EEOC right to sue letter, which is dated a full year earlier than the complaint. There's absolutely no proof in the record when that letter was mailed. Well, there was a correction letter. What do we make of that? Well, I don't think that that letter is admissible. It's not an affidavit. It's not a certified record from the EEOC. And if you were to look at what's stated in the letter for the truthfulness of it, there's no foundation as to who this person was who said when the letter was made what records they examined to find out. It's merely a statement, just as counsel would make that, well, it couldn't have been in 2002, so it had to be 2003. So even if you look at that letter, and I submit it to hearsay, rank double hearsay, because counsel is the only one who's trying to authenticate that letter. There's no one from the EEOC that lays a foundation for the knowledge of sending that letter. Now, if we assume payout versus arrow mat is authority for the three-day rule, three days after mailing, it's presumed received, you have to know when it was mailed. And we simply have no record of when it was mailed. I'd like to move on, though, to what I think is the more meaningful issue here, and that is the timeliness of the action with regard to when the employer engaged in a retaliatory act. Now, the rule is that once an employee engages in a protected activity, there can be no retaliation, and that retaliation can be presumed if the retaliatory act is closeness in time to the protected activity. Now, it's interesting. In an earlier case, Lewis v. Fairchild, the Ninth Circuit Court said that proximity to the actual protected activity was enough to infer a causal connection and establish retaliation. And in that case, there was a discrete protected activity and a discrete time for the adverse action. It happened to be a month in both cases there. And so it's easy to determine. If it's too far out, there's no inference of retaliation. If it's close in time, then there is, and there's a material fact that must go to trial. Now, later on, we have a case like Wenato v. Toshiba, where there are a series of protected activities, any one of which could have triggered the time period for looking at retaliation. And there was a proximity in time between the last of those acts and the last of the protests and the actual act of termination of employment, as well as an unnecessary, low-performance appraisal. So in Wenato, we have a series of protected acts and a shortness in time between the last protected act and the adverse action. That's different from Miller v. Fairchild, because it's one-one. Now, in this case, it's interesting, because there is no time whatsoever between the protected activity and the adverse act. It occurred during, the termination occurred during a counseling session, where the employer was attempting to get Ms. Lawson to go along with the harassment and change her interpersonal skills to accept this culture of negativity towards women. She had complained about it over a long period of time. They said, okay, it's your problem. I'd like to read for the court, before reserving the rest of my time, the thing that I think really the court should concentrate, and it starts from the record 056. Pamela is continuing her formal education to get a BS degree in business management. To this end, she should be aware of the fact that company cultures sometimes foster personal attributes, and some that are not always the most desirable, but nevertheless exist. The challenge to Pamela, and all of us at times, is to how to deal with these personalities in order to accomplish our corporate goals and department tasks. Now, what does that say? This is a review that occurred after Ms. Lawson had complained about this culture of men not wanting to be supervised by a woman. A litany of complaints. The record is full of these complaints. One of the guys she had most of her arguments with sent her an interoffice memo calling her Pamela Anderson, who at the time was a rather prominent actress and was appearing in pornography movies. They also called her the B word in public. She complained about this and complained about it. Now, in her review, the company is saying you have to get along with this conduct. And they want to enforce on her the obligation to deal with harassment, gender harassment on the job in this male-dominated culture. That, I submit, is retaliation on its face. It is actually doing the opposite of what the law requires. The law requires the employer to create an environment free from that kind of harassment. Here we have the company telling a female supervisor that she has to deal with these personalities in order to accomplish the goals. In other words, get along with these guys. I think that for them to send her to personal counseling to try to accomplish this goal, and then during a meeting after which she was terminated allegedly for insubordination for not accepting the insistence by the company that she exists in this environment, that is retaliation immediately during a session where the claimant is protesting at that time the actual harassment based on gender and race. And I submit that that is enough to go to a jury and that there is a material issue of fact on the timeliness resolved in favor of the appellant that would cause a reversal of the summary judgment order. I'd like to reserve the rest of my time. Thank you, Mr. Shepard. Johnson? Good morning, Justices. It's my privilege and pleasure to represent Reynolds Industries, Teledyne Reynolds, Teledyne Investment, and Teledyne Technologies today. First off the bat, one of the issues we addressed in our brief was the fact that although all four were involved with the summary judgment, it wasn't quite clear from the appellant's opening brief, but notwithstanding, there appears to be no contest as to the fact that Teledyne Investment and Teledyne Technologies were not the employers of the appellant, the plaintiff in this case. So that should be a non-issue, and I think at this point we're dealing strictly with Reynolds. So regardless of anything else, that part of the order should be affirmed. I'd like you to address the timeliness problem first, if you would, counsel. Yes. As counsel noted, plaintiff testified in her deposition that she did receive the letter. Now, let's look at the time factor here. Now, the Pan case tells us that you should presume that it's three days after its mail. I thought he said she didn't remember if she received the letter. She has no reason to dispute that she received it, is my recollection of what counsel stated and my recollection of the deposition testimony. And here, under the Pan case, the court says you must presume that it's received approximately three days after the mailing. Now here, at the trial court level, the district court level, there's much ado made of the fact that the letter was dated September 8, 2002, and obviously it couldn't have been because the complaint wasn't filed until afterwards. So actually, it should have been 2003. And as Your Honor noted, that was a corruption made, that was addressed, and this was not only obvious from the paperwork but also addressed in the letter, which is a business record, which is a government record as well. Is this, you're saying that this is, the letter is a business record kept in the ordinary course of business? Exactly, Your Honor, and there's no evidence to the contrary of that as well. What triggered the mailing of that second corrective letter? That was when counsel for Reynolds inquired as to what the actual date was, because obviously there appeared to be some discrepancy because the right to sue letter could not have come out after the complaint, or excuse me, before the complaint was filed. And if we look at the time frame here, Your Honor, if we're talking about a couple days difference, maybe, maybe there might be a tribal issue. But here, let's look at this. Now, the plaintiff, Ms. Lawson, has 90 days from the issuance of the letter to file her complaint, 90 days. When did she file it? She filed it 11 months after. This is not a situation where we're talking about a couple of hairs, a couple of days here and there, even a couple of weeks. We're talking about 8 months late, 11 months after the right to sue letter was issued. So, Your Honor, there's absolutely no question she received it long before the 90 days. There's no testimony, there's no evidence whatsoever that she did not have it 91 days before her complaint was filed. Now, appellants make, again, much ado about the fact of the closeness in time between what they claim was protected activity and the actual termination. But let's look at that. Conveniently omitted from the arguments here today is the fact of what actually went on in this meeting. Now, there's a long history and there's no doubt Appellants concede the fact that in 2001, 2002, 2003, she had reviews and she was, at each review, told that she needs to better her interpersonal skills. There's a long history of her having some friction with her co-employees. That's a fact, that's not disputed. Now, counsel says one called her the B word. Well, what happened to that individual? The record establishes that that individual was disciplined. That was the right thing to do and Reynolds did the right thing. Not only was that individual disciplined, but a memo went out and was posted reminding all of the employees that this type of behavior will not be tolerated. What else happened at that meeting, though? Now, this meeting was brought forth because there was a problem and because they wanted it addressed. Now, this was not a situation where she was penalized. This was during work hours, but it was held privately. She met with a Ph.D. who specializes in interpersonal relationships in the office place. There's no doubt here. In fact, it is undisputed that she became belligerent and hostile at this meeting, and that is found in the supplement excerpts of record. It's undisputed fact number 18, 19, and 20. Those are the key ones we're looking at here. You know, this is on summary judgment, so we have to draw all inferences in her favor. So that, to me, poses some problem. What you're saying may be absolutely accurate, but if there's any possibility of another inference being drawn, it has to go to trial. Your Honor, but there's more that happened at this meeting. Not only was she belligerent, hostile. Not only did she say, the meeting's over when I say it's over, and I'm not going to do what you tell me to do. Now, first of all, that's not protected activity. It doesn't matter if you're a woman, if you're a man, if you're green, if you're brown. Well, more to Judge Fletcher's point. Is that disputed? Is what happened at that meeting disputed? That is not disputed, Your Honor. And therefore, there is no question as to what inference can be taken. That's not disputed. And what is very, very key here is what else happened. Now, she admitted at this meeting, or she told everyone at this meeting, that instead of signing her full name on the drafts that she had to approve. Now, stepping back just a moment, Reynolds is in the business of designing and manufacturing products for the aerospace industry. So obviously, it's key not just to the public safety, but also potentially national security as well. Now, Reynolds is in this business. She says, on the drawings that I still saw problems, I initialed them instead of writing my full name. That was my way of protesting. And that is undisputed. Again, that's fact number 20. It's undisputed that she did that. Now, it's also undisputed, isn't it, that the actual final drawings had her full name? Well, what happened was, as soon as this information was brought forth to Mr. McCormick, her supervisor, he went and checked six months' worth. He couldn't find any drawings which only had the initial. He only went back six months. But the fact of the matter is, just her saying this,  by her putting out this threat, that in and of itself is a dereliction of duty. Now, whether she did that or not, whether there's actually a drawing, who knows at this point. But obviously, this is a great concern not just to the economics of the company itself, but again, to security of the public. You can't have individuals, you can't have employees who supervise others and proof and correct drawings for the aerospace industry saying, maybe I skipped a couple because I wanted to. Essentially, that's what she's saying. You can't have that kind of individual. And again, that doesn't go to racial discrimination, gender bias, none of those reasons. And those two specific points, one, her behavior, her insubordination at the meeting, and two, the fact that she told everyone, I initialed instead of writing my full name and I allowed things to go past me that shouldn't have gone past me. Because she admits, she says, that when she was asked whether or not they could affect the integrity of the design, she said, maybe. Or I believe the actual words was, it could have. So that alone is a non-retaliatory and legitimate basis upon which to terminate Ms. Lawson. There's no evidence at that point, after we brought that information forward, after we brought these undisputed facts forward, it was up to the appellant to come back and show that there actually was an intentional discriminatory basis. And that they have not done in this case. Now, in fact, another thing I'd like to point out is, here today in council referred to Ms. Lawson's concerns with respect to her employees and her claim that she was discriminated against because of her gender. We haven't heard race. We've never heard race. In fact, we never heard race in the EEOC. We never heard race in the FEHA claims. We never heard race until this complaint was filed. And that goes to the second argument. All of these facts obviously address the fact that there is no trialable issue with respect to the FEHA claim. The same facts show us that there's no trialable issue with respect to the 1981 cause of action, which has to be based upon race. In fact, going back to the record, when she was asked, Reynolds said, Ms. Lawson, we need some facts to investigate your claim. Give us all you've got. She gives us her Exhibit H, and her Exhibit H, which is found at Excerpts of Record, page 61, has nothing about race. So there can be no trialable issue with respect to the 1981 action. Now, the Title VII action is the one that we talked about already, and that's the one that's barred by the statute of limitations. Filing a complaint 11 months after the right to sue letter was issued is certainly not a timely matter. It's certainly not a timely complaint. And for all of these reasons, because she was properly terminated, because there was no racially or gender-biased reason for her termination, because it was a legitimate and non-retaliatory action taken by Reynolds to protect not just its company, but the general public as well, there is no trialable issue, and the judgment should be affirmed. Thank you. McCormick was the supervisor that we're talking about, is that true? Yes, Your Honor. And he was the person that actually promoted her to the supervisory position. I believe so, Your Honor. In fact, the record is replete. He has this declaration that says he was happy with her work, but for this up until this point. And the record also shows that she was warned 2001, 2002, 2003. Was he the one that brought the Ph.D. into, the counselor in to try to address this? It was, I believe it was coordination with the HR department, Your Honor. Okay. Thank you. All right, thank you. Mr. Shepard. Thank you, Your Honor. I'd like to address several things. First of all, with regard to the 90-day timeliness issue, that only affects the Title VII action. So even if the court were to rule an appellant's favor, it would only support summary judgment on the Title VII action. Of course, it's our position that without knowing when the letter actually went out, and there's no evidence of that in the record, there's no way to figure out or have a start time period for any three-day receipt rule. Also, with regard to the argument that Section 1981 does not include discrimination based on gender, that's true, but it does allow a cause of action for retaliation and for engaging in a protected activity. Now, does the 1981 claim have to first go to the EEOC? No, it doesn't. And for that reason, you can't say that she did not bring up race with regard to 1981 or based her 1981 action on gender by looking at the EEOC claim. She first has to make the claim in the complaint that she filed, and that was done in this case. With regard to the Fair Employment and Housing Act, there's no 90-day timeliness issue with regard to that also. It's similar to Section 1981. And keep in mind that her complaint is based primarily on the swift retaliation after engaging in a protected activity under all of these statutes. Now, there are several things that counsel pointed out, and that is that their legitimate, so-called legitimate non-retaliatory reason for terminating Ms. Lawson was insubordination at that meeting and somehow this non-problem with the records. If you'll look at excerpts from the record, page 043, there's a declaration by Ms. Lawson that describes how that meeting started, how she thought it was going to be a private, nice meeting where they could all talk and maybe resolve this thing, and that just simply did not happen. So there is evidence in the record to rebut what counsel says are uncontested facts about what happened at that meeting. First of all, it's the state of mind of Mr. McCormick and the company. When deciding to terminate Ms. Lawson, they said they did it because of retaliation. Oh, and by the way, appellants concede establishment of a prima facie case for retaliation. What they're saying is that there's no causal connection between the adverse action, that is the termination, and the protected activity because there's too much time in between each. I submit that there's no time in between each and therefore it's a non-issue. That's because you're talking about different protected activities. Yes, and the last protected activity was her refusing at the meeting to go along with these insistences that she get over the hostile environment based on her race and gender. And that is absolutely against the law. You are not required to get along in a hostile environment. They're admitting, yes, these men did this, but you have to, in order to promote company goals, go along. I submit she has the right to be insubordinate if that's what the company is telling her to do. And that's exactly what they're doing. He said it in a review, this is the reason for her interpersonal problems with these men because she will not get along, she will not act nice, she's not ready to make nice, and we can't allow that. Was the counselor, the counselor was a female though, wasn't it? Yes. Okay. Yes. But this is Mr. McCormick who came in, took over the counseling session, and began doing or acting in a way that was her complaint all along. You don't support me against these men. You won't let me discipline them. This reason about not or initialing these documents was her way of dealing with these men who refused to take her oral direction. She says, okay, you won't do it. And I say, I'm not going to sign your document, I'll initial it, because you know as well as I do that it can't go any further unless you have a full signature. There's no problem with that. They do it right, she'll give them the full signature. Now, her belief that it wouldn't go any further was because people check her work, and it may have been Mr. McCormick who had to check to make sure she had signed off on these documents. And that's an inference as to why he rushed off and reviewed the files to see if he may have messed up and let the documents go through with just her initials. Ms. Lawson said in her declaration, paragraph 16, excerpt from the record 043, that I initialed those documents because they did not comply with the standards of the company. And they would not take my oral direction, and so this is the way I cope with it. I'll just initial it. They're going to have to come back to me because they don't have my full signature. That's what she did, and apparently they came back because they found no evidence of this. It's only an issue at that point, and somebody yelling, fire, as counsel said, because the inference is that McCormick now may have a problem. Because if those initials were on documents that went past his approval, now he's got a problem. So I would submit that that last meeting, first of all, was Ms. Lawson engaging in a protected activity. She was terminated because of that, because she would not go along with what the law says. She has the right to complain about, and the company has an obligation to fix. That, Your Honor, is a tribal issue of fact as to why they terminated her, and you only have to find that retaliation was one of the reasons. So if it was insubordination, failure to follow company rules regarding signing these documents, and retaliation is a tribal issue of material fact, and summary judgment is improper. And I would submit on that unless there are other questions. All right, thank you, Jeffrey. The matter just argued will be submitted.
judges: Fletcher, Rymer, Beistline